**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANCIS LUCCHESE-SOTO, KEVIN MCGUIRE, MATTHEW WICKHAM, and AMITAI HELLER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CRITERION COLLECTION, LLC,<br><br>Defendant. | Case No. 1:24-cv-07345-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
(212) 513-3200

*Attorneys for Defendant The Criterion Collection, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 2

PROCEDURAL BACKGROUND ........ 4

LEGAL STANDARD ........ 5

ARGUMENT ........ 5

I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE WIRETAP ACT BECAUSE CRITERION WAS A PARTY TO THE ALLEGED COMMUNICATIONS. ........ 5

II. PLAINTIFFS LUCCHESE-SOTO'S AND HELLER'S WESCA AND FSCA CLAIMS ARE DEFEATED BY THEIR OWN CONSENT ........ 9

III. PLAINTIFFS' STATE WIRETAP CLAIMS FAIL BECAUSE THEIR INTERACTIONS WITH THE WEBSITE DO NOT CONSTITUTE "CONTENTS" OF COMMUNICATIONS UNDER EITHER WESCA OR THE FSCA ........ 12

A. Plaintiffs Fail to Allege Interception of "Contents" of Communications Under WESCA ........ 12

B. Plaintiffs Fail to Allege Interception of "Contents" of Communications Under the FSCA ........ 14

CONCLUSION ........ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aubrey v. New Sch.*,
624 F. Supp. 3d 403 (S.D.N.Y. 2022)....................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Brown v. Learfield Commc'ns, LLC*,
No. 1:23-cv-00374, 2024 WL 3676709 (W.D. Tex. June 27, 2024)....................8

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................6

*Cmmw. v. Byrd*,
235 A.3d 311 (Pa. 2020)....................11

*Cohen v. Casper Sleep Inc.*,
No. 17CV9325, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)....................6, 8

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................12, 13

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. July 12, 2023)....................13

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)....................3

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp.....................7, 8

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................6, 7

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
747 F.3d 145 (2d Cir. 2014)....................5

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021)....................14, 15

*Krys v. Pigott*,
749 F.3d 117 (2d Cir. 2014)....................5

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)....................5

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................3

*McGuire, et al. v. The Criterion Collection*,
No. 1:24-cv-07354, Dkt. No. 1 (S.D.N.Y.)....................4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................8

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-cv-01159, 733 F.Supp.3d 1072 (W.D. Wash. May 13, 2024)....................7

*Okash v. Essentia Health*,
No. CV 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024)....................8

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022)....................9

*Scottrade, Inc. v. BroCo Invs., Inc.*,
774 F. Supp. 2d 573 (S.D.N.Y. 2011)....................5

*Stalley v. ADS All. Data Sys., Inc.*,
296 F.R.D. 670 (M.D. Fla. 2013)....................11

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013)....................5, 6

*United States v. Tarantino*,
617 Fed. Appx. 62 (2d Cir. 2015)....................6

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
464 F. Supp. 3d 634 (S.D.N.Y. 2020)....................10

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024)....................5, 13

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015)....................3

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................8

**Statutes**

18 Pa. Cons. Stat. § 5702 ........ *passim*

18 U.S.C. § 2150(4) ........ 8

18 U.S.C. § 2511 ........ *passim*

Florida Security of Communications Act, Fla. Stat. Ann. § 934.03 ........ *passim*

Video Privacy Protection Act, 18 U.S.C. § 2710 ........ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........ 4

## INTRODUCTION

Plaintiffs' Consolidated Class Action Complaint (Dkt. 12) ("Complaint") against Defendant The Criterion Collection, LLC ("Defendant" or "Criterion") wrongfully attempts to vilify under various federal and state privacy laws the use of innocuous website technologies, some of which are essential to operate Criterion's business. The Complaint displays a fundamental misunderstanding of the technologies themselves, the way they are used by Criterion, and the operation of Criterion's business. Even more critical at this early stage of the case, the Complaint seeks to misapply the law to these pled facts.

Specifically, Plaintiffs claim Criterion disclosed their online browsing information to Facebook and other third parties by embedding technologies on Criterion's website, https://www.criterionchannel.com/ (the "Website") and mobile application (the "App") in violation of the Video Privacy Protection Act ("VPPA"), the Federal Wiretap Act (the "Wiretap Act"), the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), and the Florida Security of Communications Act ("FSCA"). Each of Plaintiffs' wiretapping claims under the Wiretap Act, WESCA and the FSCA (Counts II, III, and IV ) suffer from incurable legal and factual deficiencies that warrant dismissal.[1]

Plaintiffs' federal Wiretap Act claim fails under the plain text of the statute because, based on Plaintiffs' own allegations, Criterion was a party to the communications at issue. The Wiretap

---

[1] Although Criterion moves only against Plaintiffs' federal and state wiretapping claims in this motion, Criterion asserts that Plaintiffs' VPPA claim is similarly baseless and a result of incorrect assumptions regarding the targeted technologies and Criterion's business. For example, Plaintiffs portray Vimeo as a video analytics tool, but ignore, or are unaware of, the fact that Vimeo is the actual ***platform*** that operates Criterion's streaming service. In other words, the entire infrastructure and software is created by Vimeo with Criterion's branding on top in a white-label arrangement. Similarly, the Segment API tool is an internal tool used on Criterion's backend to help it decode and organize its own data. Criterion will address these factual errors and accompanying defenses at the appropriate stage of the case through discovery and motion practice.

Act specifically excludes "parties to the communication" from liability. The Complaint contains no allegations that support any exception to this well-established rule.

Plaintiffs' state wiretap claims fail because Plaintiffs' alleged interactions with the Website and App do not constitute "contents" of communications under either WESCA or the FSCA.

As for Plaintiffs Lucchese-Soto and Heller, each of their wiretap claims (brought under the Wiretap Act, WESCA, and the FSCA) fail for the additional independent reason that they, as subscribers of Defendant's Criterion Channel Service, necessarily consented to the alleged disclosures when they signed up for Criterion's services.

Therefore, Counts II, III, and IV of the Complaint should be dismissed as to all Plaintiffs.

## FACTUAL BACKGROUND

The Criterion Collection is a home-video distribution company that focuses on licensing, restoring, distributing, and streaming classic and contemporary films. Compl. ¶ 2. Criterion operates the Criterion Channel video streaming service, a subscription-based service which provides members with access to certain films. *Id.* at ¶ 2.

Plaintiffs allege that they each subscribed to Criterion's services and watched videos on the Criterion's Website and App. Plaintiffs claim that by embedding third party analytics tools—the Twilio Segment API/SDK, the Vimeo API/SDK, and the Meta Pixel (collectively, the "Tracking Tools")—onto the Website and App, Criterion improperly disclosed visitors' personally identifiable information ("PII") to unauthorized third parties by transmitting identifiers and other data from the Website and App, such as URLs and video viewing information. Compl. ¶¶ 31-73. Specifically, Plaintiffs claim that by using the Website and/or App to watch videos, the following information about them was disclosed to Twilio, Vimeo, and/or Meta: name, email address, user ID, title and video ID of videos viewed, and video interactions. *Id.* ¶¶ 110, 115, 121, 127.

As Plaintiffs allege in the Complaint, "[t]o receive access to the Criterion Channel Service, a user must specifically register for it." Compl. ¶ 23. Plaintiffs allege that they voluntarily "created an account and purchased a subscription to The Criterion Channel Service" in 2018 (Plaintiffs McGuire and Wickham), 2022 (Plaintiff Lucchese-Soto), and 2023 (Plaintiff Heller). *Id*. ¶¶ 107, 112, 118, 124. The sign-up page for the Criterion Channel Service as it existed in 2022, when Plaintiffs Lucchese-Soto and Heller signed up, is available at the link below.[2] Immediately above the "**Start subscription**" button, there is a disclaimer that says by clicking "Start subscription," users must agree to Criterion's Terms of Service, Cookies Policy and Privacy Policy. The words and phrases "**Terms of Service**," "**Cookies Policy**," and "**Privacy Policy**" are all highlighted in the text and hyperlinked to other documents:

[2] https://web.archive.org/web/20220101050828/https://www.criterionchannel.com/checkout/subscribe/purchase. In deciding a motion to dismiss, the Court may consider not only the factual allegations in the complaint but also any document that is incorporated by reference or integral to the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Such documents include websites—e.g., Criterion's Website, which is referenced dozens of times throughout the Complaint. *See, e.g.,* Compl. ¶¶ 3, 27-31; 35-40; 43; 44-46; 67; 69-74; 90-93; 112; 115; 117-119; 121, 123-124; 127; 129; 140-143; 172; *see also* Compl. ¶ 23, n.3 (explicitly citing to the Website's Privacy Policy); *Martin v. Meredith Corp*., 657 F. Supp. 3d 277, 284 n.3 (S.D.N.Y. 2023) (considering webpages on a motion to dismiss VPPA claim "because they are incorporated in and integral to the complaint"); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 693 n.3 (S.D.N.Y. 2009) ("Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss.").

In addition, the Court may consider matters subject to judicial notice, including language contained on websites that are freely available to the general public. *See, e.g., Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156 (S.D.N.Y. 2015) (taking judicial notice of information publicly announced on party's website); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 179 n. 8 (S.D.N.Y.2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.' "); *Finn v. Barney*, 471 Fed. Appx. 30 (2d Cir. 2012) (affirming district court's decision to take judicial notice of information available on website). Courts have thus taken judicial notice of both publicly-available webpages and archived copies of those same webpages. *See, e.g., Aubrey v. New Sch.*, 624 F. Supp. 3d 403 (S.D.N.Y. 2022) ("[T]he Court may take judicial notice of this publicly available information via the [internet archive] Wayback Machine.")

> By clicking below, you agree to our Terms of Service, Cookies Policy, Privacy Policy, and automatic renewal. After the trial ends on October 19, 2022, your The Criterion Channel subscription will begin. You authorize this site, appearing as OTT* CRITERIONCHANNEL, to place a () authorization hold on your card today and charge $99.99 USD plus any tax each year thereafter at the current rate until you cancel. Cancel any time in your account settings.
>
> Start subscription

In order for Plaintiffs Lucchese-Soto and Heller to purchase subscriptions to Criterion as they allege, they must have completed the "Start Subscription" process and agreed to the Terms of Service, Cookies Policy, and Privacy Policy.

As to Plaintiffs McGuire and Wickham, although they allege that they purchased a subscription on the website and watched content starting in 2018, it is public knowledge that Criterion Channel's website did not launch until April 2019.[3]

## PROCEDURAL BACKGROUND

On September 27, 2024, Plaintiff Lucchese-Soto filed a putative class action complaint against Criterion in connection with the use of Tracking Tools on the Website and App, asserting one count for violation of the VPPA. *See* Dkt. No. 1. Also on September 27, 2024, Plaintiffs McGuire, Wickham, and Heller filed a putative class action complaint against Criterion, asserting claims for violations of the VPPA, Wiretap Act, and WESCA, as well as one count for common law intrusion upon seclusion. *See McGuire, et al. v. The Criterion Collection*, No. 1:24-cv-07354, Dkt. No. 1 (S.D.N.Y.). On December 6, 2024, Plaintiffs filed a single, consolidated class action complaint against Criterion, asserting claims for (1) violation of the VPPA; (2) violation of the Wiretap Act; (3) violation of WESCA; and (4) violation of the FSCA. *See* Dkt. No. 12.

---

[3] *See generally*, https://www.criterion.com/current/posts/6253-the-c; https://variety.com/2019/digital/news/criterion-channel-launch-date-1203124497/.

## LEGAL STANDARD

Defendant moves to dismiss Counts II, III, and IV of Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court should generally accept well-pleaded factual allegations as true but "that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014). Similarly, a court is "not bound to accept as true a legal conclusion couched as a factual allegation, nor [is it] required to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

## ARGUMENT

### I. Plaintiffs Fail to State a Claim Under the Federal Wiretap Act Because Criterion Was a Party to the Alleged Communications.

Plaintiffs' claim under the federal Wiretap Act is defeated by their own allegations and the plain text of the statute. The Wiretap Act "generally prohibits the interception or wiretapping of electronic communications not authorized by a court of law ***or permitted by one of the statute's exceptions***." *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013) (citing 18 U.S.C. § 2511) (emphasis added).[4] One such statutory exception exempts "parties to the communication" from liability:

> It shall not be unlawful… for a person not acting under color of law to intercept a wire, oral, or electronic communication **where such person is a party to the communication or where *one* of the parties to the communication has given**

[4] Because the Wiretap Act has both criminal and civil applications, it must be construed strictly with any ambiguity resolved in favor of the defendant. *See Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *Scottrade, Inc. v. BroCo Invs., Inc.*, 774 F. Supp. 2d 573, 584 (S.D.N.Y. 2011). The same is true for WESCA and the FSCA. *Cf. Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1204 (Mass. 2024) (applying rule of lenity to conclude that use of tracking technologies in connection with a website was not actionable under that state's wiretap statute).

> **prior consent to such interception**, unless such communication is intercepted for the purpose of committing any criminal or tortious act . . . .

18 U.S.C.A. § 2511(2)(d) (emphasis added).

Here, the Complaint expressly alleges that the communications at issue were between Plaintiffs and Criterion. Compl. ¶¶ 169-171, 173. Thus, Criterion was undoubtedly "a party to the communication." *See, e.g.,*. Compl. ¶¶ 169-170, 173. Under the Wiretap Act, as a party to the communication, Criterion cannot be liable for a violation of the statute. *Cohen v. Casper Sleep Inc.*, No. 17CV9325, 2018 WL 3392877, at *3 (S.D.N.Y. July 12, 2018) (dismissing Wiretap Act claim "because § 2511 is a one-party consent statute" and "it is clear that the [defendants] were parties to the communication"). By their own allegations, Plaintiffs have pled themselves out of court on their Wiretap Act claim.

The only way for Plaintiffs to sustain a claim under the Wiretap Act would be to plausibly allege that the communications were "intercepted for the purpose of committing any criminal or tortious act" (i.e., the "crime-tort exception"). 18 U.S.C. § 2511(2)(d). Plaintiffs have not done so. Nor can they.

In the Second Circuit, the crime-tort exception is "construed narrowly." *Jiau*, 734 F.3d at 152. "[T]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is <u>independent</u> of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (emphasis added). The crime or tort must have been the "primary motivation" or "a determinative factor" for the defendant's conduct. *In re DoubleClick Inc. Privacy Litig.,* 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001); *see also United States v. Tarantino,* 617 Fed. Appx. 62, 65 (2d Cir. 2015) (summary order). Moreover, the exception "is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to

blackmail, threaten, or publicly embarrass the recorded party." *Jiau*, 734 F.3d at 152. *See also Cohen*, 2018 WL 3392877 at *4 (finding plaintiff's allegations "that defendants' conduct amounted to a tort" insufficient under the crime-tort exception, and noting "whether a tort was committed is irrelevant—the test is whether Defendants intended to commit a tort.") (underline in original).

Plaintiffs do not specifically invoke the crime-tort exception or allege any direct facts supporting the exception. Rather, they merely allude to the exception by alleging that Criterion "secretly procured and used" third party tracking tools to intercept Plaintiffs' communications, which "helps [Criterion] monetize the Criterion Channel Service and maximize revenue and expand its paying user base" and that such conduct was "knowing, willful, and intentional". Compl. ¶¶ 83, 171-172. These conclusory allegations plainly fail to support the application of the crime-tort exception. Indeed, Plaintiffs do not even identify what crime or tort Criterion would commit if it "secretly" and "knowingly" monetized Plaintiffs' data as alleged.[5]

In *In re DoubleClick Inc. Priv. Litig.*, plaintiffs similarly brought a class action lawsuit against DoubleClick for violation of the Wiretap Act and a number of other privacy laws, in connection with DoubleClick's practice of "collecting, compiling and analyzing information about Internet users through proprietary technologies and techniques" which it used to "target online advertising." 154 F. Supp. 2d at 500. Judge Buchwald granted DoubleClick's motion to dismiss the Wiretap Act claim, finding the complaint failed to articulate any facts to support an inference that defendant accessed plaintiffs' communications "with the 'insidious' intent to harm plaintiffs

[5] Again, a plaintiff must allege that the defendant's "primary purpose" in intercepting the communication was to commit a crime or tort "independent of the interception itself. Where, as here, the alleged interception and transmission are part of the same process, the crime or tort must necessarily be independent of disclosure as well. *See, e.g., Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159, 733 F.Supp.3d 1072, 1095 (W.D. Wash. May 13, 2024) (rejecting plaintiff's argument that the "act of *recording* Plaintiff's and Class Members' communications" through web tracking technology is distinct from the purportedly independent tort of *transmitting* those communications to third parties).

or others." *Id*. at 518. "In fact, everything in the Amended Complaint suggests that DoubleClick has been consciously and purposefully executing a highly-publicized market-financed business model in pursuit of commercial gain—a goal courts have found permissible under § 2511(2)(d)." *Id*. (collecting cases). Accordingly, the court found "DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites." *Id*. at 519; *see also Cohen*, 2018 WL 3392877, at *4 (finding crime-tort exception inapplicable where defendant's use of website code was for marketing purposes).

Plaintiffs likewise fail to show that Criterion's "primary motivation" was to injure Plaintiffs. The Complaint specifically rebuts the existence of any criminal or tortious purpose; instead, it alleges that Criterion's purpose in implementing the tracking tools was "for marketing, advertising, and analytics purposes" and "to personalize messages across channels, optimize ad spend, and improve targeting." Compl. ¶¶ 81, 111, 117, 129. In other words, Plaintiffs' own allegations show that Criterion's "primary motivation" was not to perpetuate torts but simply "to make money." *In re DoubleClick Inc. Priv. Litig.,* 154 F. Supp. at 519; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (noting the crime-tort exception is "inapplicable where the defendant's primary motivation was to make money"). Thus, even assuming Criterion committed a tort in the process of advancing its "marketing purposes" (it did not), the crime-tort exception is inapplicable. Plaintiffs' Wiretap Act claim under Count II of the Complaint should be dismissed. *See, e.g., Okash v. Essentia Health,* No. CV 23-482, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (concluding that the crime-tort exception did not apply, and dismissing the Wiretap Act claim in website tracking technology case, where the plaintiff alleged that defendant "improperly profited from its invasion of Plaintiff's and the Class members' privacy in its use of their data for its economic value"); *Brown v. Learfield Commc'ns, LLC,* No.

1:23-cv-00374, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024) (similarly dismissing Wiretap Act claim in website tracking case).[6]

## II. Plaintiffs Lucchese-Soto's and Heller's WESCA and FSCA Claims are Defeated by Their Own Consent.[7]

For Plaintiffs Lucchese-Soto and Heller, there is an independent reason to dismiss each wiretap claim as to these specific Plaintiffs. Interception under WESCA and the FSCA is not unlawful where all parties to the communication have given prior consent to such interception. *See* 18 Pa. Cons. Stat. Ann. § 5704(4); Fla. Stat. Ann. § 934.03(2)(a)(3)(d). "Prior consent, including implied consent, 'can be demonstrated when the person being recorded knew or should have known[ ] that the conversation was being recorded.'" *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022).

Here, Plaintiffs Lucchese-Soto and Heller cannot state a claim under WESCA or the FSCA because they expressly consented to the use of the exact technology of which they now complain. As discussed above, Plaintiffs allege that "a user must specifically register" in order to receive access to the Criterion Channel, and that they each "created an account and purchased a subscription to The Criterion Channel Service." Compl. ¶¶ 23, 107, 112, 118, 124. As part of the process to purchase a subscription for the last several years, dating back until at least 2022, a user was presented with the following disclaimer requiring their agreement to the Terms of Service, Cookies Policy and Privacy Policy as the last step before making their purchase:

---

[6] As discussed in Section III, *infra*, Plaintiffs also fail to plausibly allege that the "contents" of their communications were intercepted. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014). Plaintiffs' Wiretap Act claim fails on that basis as well. *See* 18 U.S.C. § 2150(4) (defining "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication . . .) (emphasis added).

[7] Criterion does not concede that WESCA or FSCA even apply under applicable New York choice of law rules. However, given that the claims fail on their own terms, as described herein, a choice of law analysis is unnecessary at this juncture. Should either claim survive this motion to dismiss, Criterion expressly reserves the right to raise the choice of law issue after appropriate discovery

By clicking below, you agree to our Terms of Service, Cookies Policy, Privacy Policy, and automatic renewal. After the trial ends on October 19, 2022, your The Criterion Channel subscription will begin. You authorize this site, appearing as OTT* CRITERIONCHANNEL, to place a () authorization hold on your card today and charge $99.99 USD plus any tax each year thereafter at the current rate until you cancel. Cancel any time in your account settings.

Start subscription

The words and phrases "**Terms of Service**," "**Cookies Policy**," and "**Privacy Policy**" are all highlighted in the text and hyperlinked to other documents.

This is a classic click-wrap agreement,[8] which Plaintiffs Lucchese-Soto and Heller accepted by establishing their Criterion accounts. By clicking "Privacy Policy", Plaintiffs could view Criterion's Privacy Policy, available at the link below,[9] which expressly states that Criterion automatically collects users' information when they use Criterion's services:

> Each time you visit the Service, we automatically collect certain information about your device and your interaction with the Service. **This may include your viewing activity, your IP address, location information, your browser type, your Internet service provider (ISP), referring/exit pages, your operating system, date/time stamps, and related metadata. Some of the personal information you provide may be shared with authorized service providers involved in operating the Service**. For example, we use Vimeo OTT to power the Service and provide assistance in certain areas of customer support.

[8] A click-wrap agreement is just one form of agreement, commonly upheld in the Second Circuit. "[C]lickwrap agreements are an increasingly common type of web-based contract; they are formed when a user is presented with 'a message on his or her computer screen' and is required to 'manifest [ ] her assent to the terms.'" *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) (citing *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012))."[A]n internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016). And "[t]he Second Circuit routinely enforces click-wrap agreements as valid and binding contracts". *Valelly,* 464 F. Supp. at 640.

[9] https://web.archive.org/web/20220930023340mp_/https://www.criterionchannel.com/privacy.

*Id*. (emphasis added); *see also* Compl. ¶ 23, n 3 (citing to Criterion's Privacy Policy). The Privacy Policy goes on to discuss the types of service providers such information is shared with, including "payment providers, email service providers, and ***analytics companies***". *Id*. (emphasis added).[10]

By agreeing to Criterion's Privacy Policy when creating their accounts, Plaintiffs Lucchese-Soto and Heller consented via clickwrap contract to Criterion disclosing information about their web usage, including to third parties, including for use by advertisers – just what is alleged in the Complaint Plaintiffs did so by creating their Criterion accounts and consenting to the hyperlinked Privacy Policy, which clearly outlined Criterion's use of Tracking Tools. *See Valelly*, 464 F. Supp. 3d at *640 (finding plaintiff entered into a valid, binding click-wrap agreement where "the terms were 'reasonably conspicuous' and Plaintiff was required to affirmatively agree to them, and noting "terms may be binding and enforceable even if they are only accessible through a hyperlink."). In other words, they agreed to exactly the sort of data collection that they now seek to turn into a class action against Criterion. On this basis alone, Plaintiffs Lucchese-Soto's and Heller's claims under WESCA and the FSCA fail. *Cmmw. v. Byrd*, 235 A.3d 311, 317 (Pa. 2020) (finding no violation of WESCA where Plaintiff "knew or should have known[] that the conversation was being recorded" and thus both parties consented to the alleged interception); *Stalley v. ADS All. Data Sys., Inc.*, 296 F.R.D. 670, 678 (M.D. Fla. 2013) (noting "consent is determinative for a claim under the FSCA").

---

[10] The 2019 version of the Privacy Policy includes similar language as the 2022 version, in addition to disclosures stating that the website uses "standard tracking technologies such as pixels and cookies to track user activities on our websites and applications." *See* https://web.archive.org/web/20190411161829/https://www.criterionchannel.com/privacy. Discovery may reveal that the remaining named Plaintiffs McGuire and Wickham expressly agreed to this policy in the same way as Plaintiffs Lucchese-Soto and Heller.

## III. Plaintiffs' State Wiretap Claims Fail Because Their Interactions with the Website Do Not Constitute "Contents" of Communications Under Either WESCA or the FSCA.

As a preliminary matter, it must be recognized that Plaintiffs' wiretapping claims improperly conflate the term "PII", as specifically defined in the VPPA, with the element of "electronic communications" that is fundamental to their claims. The term "PII" under the VPPA is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). On the other hand, an "electronic communication" under the wiretapping statutes must contain, taking WESCA for example, "information concerning the substance, purport, or meaning of that communication." 18 Pa. Const. Stat. § 5702.

Here, Plaintiffs' Complaint does not provide any detail as to the substance or meaning of any communication made to Criterion. This is because the nature of their claims, which Criterion vigorously disputes as unfounded, is the disclosure of information related to videos that a user viewed, not interception of the substance of a communication.  For example, a transcript of a 10-minute phone conversation between a company and its customer would constitute the "contents" of a communication under both WESCA and the FSCA. On the other hand, a simple call log record showing that a phone conversation occurred would fall far short of qualifying as a communication. Plaintiffs' allegations, the functional equivalent of call logs, are nothing more than "record information". As supported by the case law below, this Court should reject the attempt to shoehorn VPPA allegations into wiretap claims.

### A. Plaintiffs Fail to Allege Interception of "Contents" of Communications Under WESCA

Plaintiffs' allegations cannot support a claim under WESCA, which prohibits intentionally disclosing or using "the contents of any wire, electronic or oral communication, or evidence derived therefrom, [while] knowing or having reason to know that the information was obtained

through the interception of a wire, electronic or oral communication." 18 Pa. Const. Stat. § 5703(2). As discussed above, "contents" is defined as "any information concerning the substance, purport, or meaning of that communication." 18 Pa. Const. Stat. § 5702. "So, 'contents,' in this context, 'refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication.'" *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 68 (W.D. Pa. 2023) (*citing In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).

In *Gamestop*, the plaintiff alleged that the defendant violated WESCA because code on the defendant's website captured her 'mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time." *Id.*, at 69. However, as the Western District of Pennsylvania explained, the plaintiffs complaint "lack[ed] the critical necessary details for the Court's analysis of the type of information allegedly captured by [defendant]," such as what keystrokes the plaintiff entered and what webpages she visited. *Id.* ("All this information should be available to [plaintiff]; after all, she is the one who allegedly browsed [the] website. But it is absent from the amended complaint."). Without those details, and even with the Court giving the "most liberal construction" from a procedural standpoint by drawing inferences in the plaintiff's favor, the complaint failed to state a claim under WESCA because the plaintiff had not plausibly alleged that the Defendant intercepted the "contents" of her communications, as opposed to mere "routing information." *Id.*, at 70-72.[11] For example, the court explained that the plaintiff's mouse movements and clicks

[11] *Accord Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. July 12, 2023) (dismissing state wiretap claim where allegations regarding disclosure of user IDs and website browsing data through tracking tools were insufficient to establish "content" of communications were transmitted); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (holding that plaintiff did not allege that "content" was intercepted where the information captured included plaintiff's keystrokes; mouse clicks; page views; date, time and duration of visit; shipping and billing information; and IP address); *Vita*, 243 N.E.3d at 1188 (term "communication" under state wiretap act did not "extend so broadly as to criminalize the interception of web browsing and other such interactions").

"literally constitute a record of her movements within a digital space," and "[a]ny 'substance' that can flow from these movements must be inferred from the observer, and are therefore not communicative." *Id.*, at 71. Likewise, "the Court [could] only reasonably infer that the URLs corresponded to different physical locations of pages, documents, and files on GameStop's servers, which is the kind of non-content information that is not covered by [WESCA]." *Id.*, at 72.

Here, as in *Gamestop*, the Complaint fails to allege vital details, and Plaintiffs do not plead anything to indicate how their interactions with the Website were intended to convey any message whatsoever. They merely state that they "watched pre-recorded videos" on the Website or through the App. Compl. ¶¶ 107, 112, 118, 124. Plaintiffs' vague allegations that the Tracking Tools intercept their "(i) name[], (ii) e-mail address[], (iii) user ID[], and (iv) the title of the pre-recorded video viewed by [Plaintiffs]" (Compl. ¶¶ 115, 121, 127) are insufficient to establish that the "contents" of any communications were shared with Facebook as they are akin to the "record of movements" or "different physical locations of pages, documents and files" in the *GameStop* decision. *See also Gamestop,* 689 F. Supp. at 71 (rejecting plaintiff's position that "[o]nce you're on the webpage, you've communicated"). Accordingly, Plaintiffs fail to state a WESCA claim.

### B. Plaintiffs Fail to Allege Interception of "Contents" of Communications Under the FSCA

Likewise, Plaintiffs also fail to established the interception of "contents" to any communications under FSCA. Similarly to WESCA, the FSCA prohibits the interception of any "wire, oral, or electronic communication", as well as the use of the "contents of any oral, wire or electronic communication" obtained through improper interception. Fla. Stat. ¶¶ 934.03(1)(a), 934.03(1)(d). The FSCA definition of "contents" of communication mirrors that of WESCA. *See id.* § 934.02(7) (defining contents as "any information concerning the substance, purport, or

meaning of that communication."). Courts applying the FSCA in the context of website tracking technologies have found that disclosure of simple record information to third parties is insufficient to show an interception of "contents" of communications. *See Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318 (S.D. Fla. 2021).

In *Goldstein*, Plaintiffs claimed Costco's use of tracking technology on its website violated the FSCA by disclosing the contents of Plaintiffs' electronic communications to third parties. The court rejected this argument, finding that the tracking of users' activity on a website could not convey the substance of any particular communication by a visitor and therefore did not constitute "contents" of communications under the statute. *Id*. at 1321. Instead, the plaintiffs' alleged interactions with the website constituted mere record information not subject to the FSCA:

> [C]ontrary to Plaintiff's interpretation, these actions did not convey the substance of any communication. Rather, this mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store. The FSCA's text itself reinforces that such actions fall outside the statute's purview. **The statute specifically excludes "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12)(c)**. Although the tracking in this case is virtual rather than physical, the Court finds that the plain language of the statute exempts the sort of tracking that triggered this action.

*Id*. (emphasis added). In addition, the Court rejected plaintiff's claim that "Defendant recorded pages and content he viewed on Defendant's website" *Id*. at 1322 (citing *In re Zynga Priv. Litig*., 750 F.3d 1098, 1107 (9th Cir. 2014) (finding that webpages a user views are akin to addresses and do not constitute contents) and *Gonzales v. Uber Techs., Inc.,* 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (finding no contents and dismissing argument "that the user was communicating he wanted to view that webpage")).

Here, like in *Goldstein*, the information allegedly intercepted consists of nothing more than record information about Plaintiffs' visit to the Website and/or App. As discussed above,

Plaintiffs' own allegations demonstrate that no substance of communications were transmitted, only the "cyber analog to record information". *Goldstein* at 1321. *See supra*, Sec. III (A). Furthermore, the degree of tracking alleged by the Tracking Tools here falls below the level of those in *Goldstein*, where session replay technology could track the full extent of users' keystrokes (meaning the words and phrases typed into forms or chatbots on the website), mouse clicks, and other activity on the website in real time. Here, Plaintiffs merely allege that their user IDs and video titles were transmitted as a result of their visits to Criterion's Website and/or App. Plaintiffs fail to plausibly allege that this information constitutes "content" of any communication and their FSCA claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter an Order granting its motion, dismissing Counts II, III, and IV of the Consolidated Complaint with prejudice, and awarding such other relief as the Court deems just and proper.

Dated: January 21, 2025

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

Mark S. Melodia
Stosh M. Silivos
787 Seventh Avenue, Floor 31
New York, New York 10019
(212) 513-3200
mark.melodia@hklaw.com
stosh.silivos@hklaw.com

*Attorneys for Defendant The Criterion Collection, LLC*

**CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that the word count for this memorandum of law (excluding the caption, table of contents, table of authorities, signature block, and this certification) is 5,310 words, meaning the document complies with the Rule's word count limit.

Dated: January 21, 2025
New York, New York

**HOLLAND & KNIGHT LLP**



______________________________

Mark S. Melodia
Stosh M. Silivos
787 Seventh Avenue, 31st Floor
New York, New York 10019
(212) 513-3200
mark.melodia@hklaw.com
stosh.silivos@hklaw.com

*Attorneys for Defendant The Criterion Collection, LLC*



#515300665_v10