UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCIS LUCCHESE-SOTO, KEVIN MCGUIRE, MATTHEW WICKHAM, and AMITAI HELLER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>THE CRITERION COLLECTION, LLC,<br><br>                    Defendant. | Case No. 1:24-cv-07345-VEC<br><br>Hon. Valerie E. Caproni |

**DECLARATION OF YITZCHAK KOPEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS**

I, Yitzchak Kopel, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an attorney at Bursor & Fisher, P.A., Class Counsel in this action. I am an attorney at law licensed to practice in the State of New York, and I am a member of the Bar of this Court. I make this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Incentive Awards and am fully competent to do so. I have personal knowledge of all matters set forth herein unless otherwise indicated, and, if called upon to testify, I could and would competently do so.

2.      Beginning in August 2024, my firm commenced a pre-suit investigation involving a dynamic analysis of Defendant's Website. *See* FAC ¶ 27. The analysis found that "when Criterion Channel Service users with a paid account watch a pre-recorded video on the Website, Defendant discloses a user's PII" to Twilio and Meta that Plaintiffs allege identifies who the user is and what pre-recorded videos they watched. *Id.* ¶ 35.

3.      The dynamic analysis served as the factual prerequisite for this action and lent

plausibility to the Plaintiffs' allegations.

4.      This consolidated putative class action originated from two separate filings on September 27, 2024, both in the United States District Court for the Southern District of New York. One action was filed by Plaintiffs McGuire, Wickham, and Heller in the case styled *McGuire, et al. v. The Criterion Collection, LLC d/b/a The Criterion Channel*, No. 1:24-cv-07354 (S.D.N.Y). The other action was filed by Plaintiff Lucchese-Soto in the case styled *Lucchese-Soto, et al. v. The Criterion Collection, LLC*, No. 1:24-cv-07345 (S.D.N.Y). These cases were then consolidated into the Lucchese-Soto action and a consolidated complaint was filed on December 6, 2024. The material allegations of the consolidated complaint originally centered on Defendant's alleged disclosure of its subscribers' personally identifiable information to third parties Meta Platforms, Inc. (formerly known as Facebook, Inc.), Twilio, Inc., and Vimeo, Inc., without informed, written consent, in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA"), the Electronic Communications Privacy Act (the "Federal Wiretap Act" or "ECPA"), 18 U.S.C. § 2510, the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. §§ 5701 *et seq.*, and the Florida Security of Communications Act ("FSCA"), Fla. Stat. §§ 934.01 *et seq*. *Lucchese-Soto*, ECF No. 12.

5.      On January 21, 2025, Criterion filed a Motion to Dismiss as to the ECPA, WESCA, and FSCA claims. ECF No. 15-16.

6.      On January 23, 2025, the Parties filed a Proposed Fed. R. Civ. P. 26(f) report. ECF No. 17.

7.      Also on January 23, 2025, the Parties filed a joint letter pursuant to the Court's Order to consolidate the cases (ECF No. 11). ECF No. 18.

8.      On January 24, 2025, the Court adjourned the Initial Pretrial Conference. ECF No.

19.

9.  Also on January 24, 2025, the Court adopted the Proposed Civil Case Management Plan and Scheduling Order.  ECF No. 20.

10. On January 30, 2025, the Parties filed a joint letter requesting a stay of all deadlines pending mediation on April 2, 2025 with Marc Isserles, Esq. of JAMS.  ECF No. 21.

11. On January 31, 2025, the Court granted the Parties' application to stay all discovery deadlines in the matter, as well as Plaintiffs' deadline to oppose Defendant's Motion to Dismiss and Defendant's deadline to file reply papers pending the outcome of the Parties' mediation.  ECF No. 22.

12. The Parties participated in an April 2, 2025 mediation with Marc Isserles, Esq of JAMS, at which they reached a settlement in principle and agreed that an amended complaint would be filed pursuant to informal discovery exchanged between the parties.  In preparation for the mediation, the Parties also submitted lengthy, detailed, mediation statements, airing their respective legal arguments and theories on potential damages.

13. On April 4, 2025, the Parties filed a joint letter to the Court advising that the parties had reached a settlement in principle and that Plaintiffs planned to file an amended complaint in connection with the settlement.  ECF No. 23.

14. On April 14, 2025, Plaintiffs filed a First Amended Complaint alleging the same claims under the VPPA, ECPA, WESCA, and the FSCA.  However, the First Amended Complaint removed all references to Vimeo as a third party allegedly receiving personally identifiable information of the class members.  ECF No. 25.

15. On May 14, 2025, Plaintiffs filed a Class Action Settlement Agreement which set forth the terms and conditions agreed upon in the settlement in principle.  ECF No. 29-1.  Plaintiffs

also filed a Proposed Order Granting Preliminary Approval of the Class Action Settlement Agreement.  ECF No. 30-1.

16. On May 23, 2025, the Court (i) preliminary approved the Class Action Settlement Agreement; (ii) certified the class for the sole purpose of effectuating the Settlement Agreement; (iii) appointed Francis Lucchese-Soto, Kevin McGuire, Matthew Wickham, and Amitai Heller as Class Representatives; (iv) and appointed Bursor & Fisher, P.A. as Class Counsel.  ECF No. 31.

17. The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determined all the contours of the proposed class, and reached a fair and reasonable compromise after negotiating the terms of the Settlement at arms' length.

18. The Settlement Agreement creates a non-reversionary $4,500,000.00 Settlement Fund from which all Settlement Class Members are entitled to a *pro rata share*.  Settlement ¶ 2.1.

19. Attorneys' fees, costs, expenses, and service awards for Plaintiffs are to be paid from the Settlement Fund in an amount determined by the Court.  Settlement ¶ 8.1.  The Settlement permits Class Counsel to request up to one-third of the Settlement Fund in attorneys' fees, costs, and expenses, and for Plaintiffs to receive a service award of up to $2,500 each.  *Id*. ¶ 8.1, 8.4.

20. Here, Class Counsel has requested $1,465,992.87 in attorneys' fees and $33,857.13 in costs and expenses, and a service award of $2,500 for each Plaintiff.

21. Plaintiffs and Class Counsel recognize that despite their belief in the strength of Plaintiffs' claims, and Plaintiffs' and the Class's ability to secure an award of damages, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain.  Thus, the Settlement secures a more proximate and more certain monetary benefit to the Class than continued litigation.

22. To the best of my knowledge, while numerous putative class actions have been brought under the VPPA, few VPPA cases have made it to class certification, and courts that have adjudicated these cases have largely denied class certification. *Compare Jancik v. WebMD LLC*, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) (granting class certification of a VPPA claim); *with Martinez v. D2C, LLC*, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) (denying class certification of a VPPA claim); *In re Hulu Privacy Litig.*, 2014 WL 2758598 (N.D. Cal. June 17, 2014) (same); *Therrien v. Hearst Television, Inc.*, 2025 WL 509454 (D. Mass. Feb. 14, 2025) (same).

23. Further, no VPPA claim has made it past summary judgment. *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (granting summary judgment for defendant on VPPA claim); *Therrien v. Hearst Television, Inc.*, 2025 WL 1208535 (D. Mass. Apr. 25, 2025) (same).

24. Moreover, in early May 2025, the Second Circuit held in an issue of first impression that a Facebook ID and URL string sent to Facebook were not "personally identifiable information" within the meaning of the VPPA. *See Solomon v. Flipps Media, Inc.*, --- F.4th ---, 2025 WL 1256641, at *11 (2d Cir. May 1, 2025). Those are among the identifiers Plaintiffs allege are at issue here. FAC ¶ 37.

25. In addition, to even get the case to class certification, the Parties would have to undergo significant motion practice and expensive, expansive, and technologically intensive discovery. And given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both any decision on the merits as well as on class certification.

26. Looking beyond trial, Plaintiffs are also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns.

27. Defendant is also represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case, including by moving to dismiss and moving for summary judgment. Defendant would have also vigorously contested the certification of a litigation class, including the right to appeal the Court's order pursuant to Fed. R. Civ. P. 23(f). Thus, there was a significant risk of delay in achieving final resolution of this matter.

28. Plaintiffs and Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiffs and the Settlement Class Members of any potential relief whatsoever.

29. Plaintiffs and Class Counsel believe that the monetary relief provided by the Settlement weighs heavily in favor of a finding that the Settlement is fair, reasonable, and adequate, and well within the range of approval.

30. My firm undertook this representation on a wholly contingent basis recognizing that the risk of non-payment has been high throughout this litigation. There were substantial uncertainties in the viability of this case as a class action, as well as substantial uncertainties in the merits of the underlying claims, and the ability to collect on any judgment that might be obtained. Although we believed the case to be meritorious, a realistic assessment shows that the risks inherent in the resolution of the liability issues, protracted litigation in this action as well as the probable appeals process, are great.

31. Had we not resolved this matter through settlement, we would have vigorously prosecuted the case through class certification, summary judgment, trial, and appealed any determinations that may have been adverse to the Class's interests. We were therefore at great risk for non-payment. In addition, as described above, we have advanced expenses that would not have

been reimbursed absent a successful result.

32. Bursor & Fisher, P.A., is qualified and experienced in conducting class action litigation. A copy of the firm's resume is attached hereto as **Exhibit 1**.

33. In particular, my firm has extensive experience litigating class actions under the VPPA and other data privacy statutes. Bursor & Fisher certified the first ever contested class certification in a VPPA case. *Jancik v. WebMD LLC*, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025). The firm has secured victories in novel areas of data privacy law at summary judgment, on appeal, and on the pleadings. *See, e.g., Boelter v. Hearst Commc'ns Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting novel motion for summary judgment for the named plaintiff in case brought under the Michigan analog of the VPPA); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022) (reversing district court and agreeing with plaintiff's interpretation of California Invasion of Privacy Act).

34. As a result of these efforts, we have been appointed class counsel and secured sizable relief for class members in a number of data privacy matters, including those brought under the VPPA and its state analogs. *See, e.g., Schreiber v. Mayo Foundation*, Case No. 2:22-cv-00188 (W.D. Mich.) ($52.5 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Edwards v. Hearst Communications, Inc.*, Case No. 1:15-cv-09279 (S.D.N.Y.) ($50 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Jackson v. Fandango Media, LLC*, Case No. 2023LA000631 (Ill. Cir. Ct. DuPage Cnty.) ($6 million class settlement to resolve claims for alleged violations of the VPPA); *Ambrose v. Boston Globe Media Partners, LLC*, Case No. 1:22-cv-10195 (D. Mass.) ($5 million class settlement to resolve claims for alleged violations of the VPPA); *Ruppel v. Consumers Union of United States, Inc.*, Case No. 7:16-cv-02444 (S.D.N.Y.) ($16.375 million

class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 1:15-cv-05671 (S.D.N.Y.) ($13.75 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Kain v. The Economist Newspaper NA, Inc.*, Case No. 4:21-cv-11807 (E.D. Mich. Mar. 16 2023) ($9.5 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA); *Taylor v. Trusted Media Brands, Inc.*, Case No. 7:16-cv-01812 (S.D.N.Y. Feb. 1, 2018) ($8.225 million class settlement to resolve claims for alleged violations of the Michigan analog of the VPPA).

35. Moreover, my firm has served as trial counsel for class action plaintiffs in six jury trials and has won all six, with recoveries ranging from $21 million to $299 million. Most recently, in May 2019, we secured a jury verdict for over $267 million in a Telephone Consumer Protection Act ("TCPA") case in the Northern District of California. *See Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020). During the defendant's appeal of the verdict, the case settled for $75.6 million, the largest settlement in the history of the TCPA.

36. Throughout this matter, Class Counsel has performed the following work on behalf of the Class: (i) conducting an extensive pre-suit investigation into Defendant's data sharing practices, including commissioning a dynamic analysis of Defendant's Website; (ii) drafting the initial Complaint; (iii) reviewing information produced by Defendant in aid of settlement discussions; (iv) negotiating the Settlement at arm's-length with Defendant; (v) successfully moving for preliminary approval; and (vi) managing (continuing to manage) the dissemination of notice and the claims process.

37. Since the Court granted preliminary approval, Class Counsel has worked with the Settlement Administrator, Kroll Business Services ("Kroll"), to carry out the Court-ordered notice

plan. Specifically, Class Counsel helped compile and review the contents of the required notice to State Attorney Generals pursuant to 28 U.S.C. § 1715, reviewed the final claim and notice forms, and reviewed and tested the settlement website before it launched live.

38. Since class notice has been disseminated, Class Counsel has worked with Kroll on a weekly basis to monitor settlement claims and any other issues that may arise. Class Counsel has also fielded calls from Settlement Class Members.

39. Attached hereto as **Exhibit 2** are my firm's detailed billing diaries for this matter, as well as a summary of the same. I have personally reviewed all of my firm's time entries associated with this case and have used billing judgment to ensure that duplicative and unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included. Class Counsel's time entries were regularly and contemporaneously recorded by myself and the other timekeepers pursuant to firm policy and have been maintained in the computerized records of Class Counsel.

40. In addition to the time enumerated above, I estimate that Class Counsel will incur an additional fifty hours of future work in connection with the preparation of Plaintiffs' Motion for Final Approval, the Final Approval hearing, coordinating with Kroll, monitoring settlement administration, and responding to Settlement Class Member inquiries.

41. Included within **Exhibit 2** is a chart setting forth the hourly rates charged for lawyers and staff at my firm at the time the work was completed. Based on my knowledge and experience, the hourly rates charged by Class Counsel are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise. I have personal knowledge of the range of hourly rates typically charged by counsel in our field in New York, California, Florida, and elsewhere, both on a current basis and in the past. In determining Class Counsel's hourly rates

9

from year to year, my partners and I have consciously taken market rates into account and have aligned our rates with the market.

42. Through my practice, I have become familiar with the non-contingent market rates charged by attorneys in New York, California, Florida, and elsewhere (my firm's offices are in New York City, Walnut Creek, California, and Miami, Florida). This familiarity has been obtained in several ways: (i) by litigating attorneys' fee applications; (ii) by discussing fees with other attorneys; (iii) by obtaining declarations regarding prevailing market rates filed by other attorneys seeking fees; and (iv) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorney's fees in the legal newspapers and treatises.

43. The information I have gathered shows that Class Counsel's rates are in line with the non-contingent market rates charged by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable class action work. In fact, comparable hourly rates have been found reasonable by various courts for reasonably comparable services, including:

   i. *Laydon v. Mizuho Bank, Ltd.*, No. 1:12-cv-03419-GBD, ECF No. 837 (S.D.N.Y. Dec. 7, 2017), approving partner rates of $875 to $975 and associate rates of $325 to $600.

   ii. *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. April 26, 2016), approving partner rates of $834 to $1,125 and associate rates of $411 to $714.

   iii. *In re Platinum & Palladium Commod. Litig.*, Slip Op. No. 10-cv-3617, 2015 U.S. Dist. LEXIS 98691, at *13 (S.D.N.Y. July 7, 2015), approving billing rates of $950 and $905 per hour and referring to a recent National Law Journal survey yielding an average hourly partner billing rate of $982 in New York.

   iv. *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, Case No. 1:08-md-01963-RWS, 909 F. Supp. 2d 259, 271-72 (S.D.N.Y. 2012), approving fee award based on hourly rates ranging from $275 to $650 for associates and $725 to $975 for partners, as set forth in ECF No. 302-5.

   v. *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, Case No. 15-md-02672-CRB, ECF No. 3053 (N.D. Cal. Mar.

|      |      |
| ---- | ---- |
|      | 17, 2017), approving partner rates up to $1,600, and associate rates up to $790. |
| vi.  | *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. 07-md-1827-SI, ECF No. 1827 (N.D. Cal. 2013), an antitrust class action in which the court found blended hourly rates of $1000, $950, $861, $825, $820, and $750 per hour reasonable for the lead class counsel. |
| vii. | *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. RG08366506, Order of Final Approval and Judgment filed November 8, 2012, a wage and hour class action, in which the court found the hourly rates of $785, $775, and $750 reasonable for the more senior class counsel. |
| viii.| *Luquetta v. The Regents of the Univ. of California*, San Francisco Superior Ct. Case No. CGC-05-443007, Order Granting Plaintiff's Motion for Common Fund Attorneys' Fees and Expenses, filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the hourly rates of $850, $785, $750, and $700 reasonable for plaintiffs' more experienced counsel. |
| ix.  | *Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012), a civil rights class action brought by pre-trial detainees, in which the court approved a lodestar-based, *inter alia*, on 2011 rates of $850 and $825 per hour. |
| x.   | *Holloway et. al. v. Best Buy Co., Inc.*, Case No. 05-cv-5056-PJH (N.D. Cal. 2011) (Order dated November 9, 2011), a class action alleging that Best Buy discriminated against female, African American and Latino employees by denying them promotions and lucrative sales positions, in which the court approved lodestar-based rates of up to $825 per hour. |
| xi.  | *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), adopted by Order Accepting Report and Recommendation filed February 2, 2011, a class action in which the court found reasonable 2010 hourly rates of up to $835 per hour. |
| xii. | *Qualcomm, Inc. v. Broadcom, Inc.*, Case No. 05-cv-1958-B, 2008 WL 2705161 (S.D. Cal. 2008), in which the court found the 2007 hourly rates requested by Wilmer Cutler, Pickering, Hale & Dorr LLP reasonable; those rates ranged from $45 to $300 for staff and paralegals, from $275 to $505 for associates and counsel, and from $435 to $850 for partners. |

44. The reasonableness of Class Counsel's hourly rates is also supported by several surveys of legal rates, including the following:

i. In an article entitled "Big Law Rates Topping $2,000 Leave Value 'In Eye of Beholder,'" written by Roy Strom and published by Bloomberg Law on June 9, 2022, the author describes how Big Law firms have crossed the $2,000-per hour rate.  The article also notes that law firm rates have been increasing by just under 3% per year.  A true and correct copy of this article is attached hereto as **Exhibit 3**.

ii. The CounselLink Enterprise Management Trends Report for June 2022 states that the median partner rate in New York was $1,030.  The report also notes that median partner rates have grown by 4.0% in San Francisco and 4.3% in New York.  A true and correct copy of this article is attached hereto as **Exhibit 4**.

iii. In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 or more revealed in public filings and major surveys.  The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an average rate between $879 and $882 per hour.  A true and correct copy of this article is attached hereto as **Exhibit 5**.

iv. In an article published April 16, 2012, the Am Law Daily described the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011.  A true and correct copy of that article is attached hereto as **Exhibit 6**.  That article confirms that the rates charged by experienced and well-qualified attorneys have continued to rise over this five-year period, particularly in large urban areas like the San Francisco Bay Area.  It also shows, for example that the top quartile of lawyers bill at an average of "just under $900 per hour."

v. Similarly, on February 25, 2011, the Wall Street Journal published an on-line article entitled "Top Billers."  A true and correct copy of that article is attached hereto as **Exhibit 7**.  That article listed the 2010 and/or 2009 hourly rates for more than 125 attorneys, in a variety of practice areas and cases, who charged $1,000 per hour or more.  Indeed, the article specifically lists *eleven* (11) Gibson Dunn & Crutcher attorneys billing at $1,000 per hour or more.

vi. On February 22, 2011, the ALM's Daily Report listed the 2006-2009 hourly rates of numerous San Francisco attorneys.  A true and correct copy of that article is attached hereto as **Exhibit 8**.  Even though rates have increased significantly since that time, Class Counsel's rates are well within the range of rates shown in this survey.

vii. The Westlaw CourtExpress Legal Billing Reports for May, August, and December 2009 (attached hereto as **Exhibit 9**) show that as far back as

    2009, attorneys with as little as 19 years of experience were charging $800 per hour or more, and that the rates requested here are well within the range of those reported. Again, current rates are significantly higher.

viii. The National Law Journal's December 2010, nationwide sampling of law firm billing rates (attached hereto as **Exhibit 10**) lists 32 firms whose highest rate was $800 per hour or more, eleven firms whose highest rate was $900 per hour or more, and three firms whose highest rate was $1,000 per hour or more.

ix. On December 16, 2009, The American Lawyer published an online article entitled "Bankruptcy Rates Top $1,000 in 2008-2009." That article is attached hereto as **Exhibit 11**. In addition to reporting that several attorneys had charged rates of $1,000 or more in bankruptcy filings in Delaware and the Southern District of New York, the article also listed 18 firms that charged median partner rates of from $625 to $980 per hour.

x. According to the National Law Journal's 2014 Law Firm Billing Survey, law firms with their largest office in New York have average partner and associate billing rates of $882 and $520, respectively. Karen Sloan, *$1,000 Per Hour Isn't Rare Anymore; Nominal Billing Levels Rise, But Discounts Ease Blow*, National Law Journal, Jan. 13, 2014. The survey also shows that it is common for legal fees for partners in New York firms to exceed $1,000 an hour. *Id.* A true and correct copy of this survey is attached hereto as **Exhibit 12**.

45. Bursor & Fisher's rates have been deemed reasonable by Courts across the country, including in New York, California, Michigan, Illinois, Missouri, and New Jersey for example:

i. *Russett v. Northwestern Mutual Life Insurance Co.*, Case No. 19-cv-07414, S.D.N.Y. (Oct. 6, 2020 Final Judgment And Order Of Dismissal With Prejudice).

ii. *Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279, S.D.N.Y. (Apr. 24, 2019 Final Judgment *And* Order Of Dismissal With Prejudice).

iii. *Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812, S.D.N.Y. (Feb. 1, 2018 Final Judgment And Order Of Dismissal With Prejudice).

iv. *Rodriguez v. CitiMortgage, Inc.*, Case No. 11-cv-4718, S.D.N.Y. (Oct. 6, 2015), the court concluded during the *fairness* hearing that Bursor & Fisher's rates for two of its partners, Joseph Marchese and Scott Bursor,

        were "reasonable."

    v.   *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (concluding that "blended rate of $634.48 is within the reasonable range of rates").

    vi.   *In re Haier Freezer Consumer Litig.*, Case No. C11-02911 EJD, N.D. Cal. (Oct. 25, 2013 Final Judgment And *Order* Granting Plaintiffs' Motion For Final Approval Of Class Action Settlement And For Award Of Attorneys' Fees, Costs And Incentive Awards).

    vii.   *Kokoszki v. Playboy Enterprises, Inc.*, Case No. 19-cv-10302, E.D. Mich. (Aug. 19, 2020 Final Judgment And Order Of Dismissal With Prejudice).

    viii.   *Moeller v. American Media, Inc.*, Case No. 16-cv-11367, E.D. Mich. (Sept. 28, 2017 Order And Judgment Of Dismissal With Prejudice).

    ix.   *In re Michaels Stores Pin Pad Litigation*, Case No. 11-cv-03350, N.D. Ill. (Apr. 17, 2013 Order Approving *Settlement*).

    x.   *In re Blue Buffalo Company, Ltd. Marketing and Sales Practices Litigation*, Case No. 14-md-02562, E.D. Mo. (*June* 16, 2016 Order Awarding Fees And Costs).

    xi.   *Rossi v. The Procter & Gamble Co.*, Case No. 11-7238, D.N.J. (Oct. 3, 2013 Final Approval Order And Judgment).

46.   No court has ever cut Class Counsel's fee application by a single dollar on the basis that our hourly rates were not reasonable.

47.   To date, my firm has also expended $33,233.39 in out-of-pocket costs and expenses in connection with the prosecution of this case. Attached as **Exhibit 13** is an itemized list of those costs and expenses. These costs and expenses are reflected in the records of Class Counsel and were necessary to prosecute this litigation. Cost and expense items are billed separately, and such charges are not duplicated in Class Counsel's billing rates.

48.   These expenses include court fees, research fees—including the dynamic analysis that is at the foundation of the allegations in this lawsuit—service fees, and travel expenses related to the preliminary approval hearing (which was taken under submission after the expenses were

incurred).

49.     I am of the opinion that Mr. Lucchese-Soto, Mr. McGuire, Mr. Wickham, and Mr. Heller's active involvement in this case was critical to its ultimate resolution. They took their roles as class representatives seriously, devoting significant amounts of time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as class representatives, I do not believe such a strong result could have been achieved.

50.     Mr. Lucchese-Soto, Mr. McGuire, Mr. Wickham, and Mr. Heller equipped Class Counsel with critical details regarding their experiences with Defendant. They assisted Class Counsel in investigating their claims, detailed their experiences as subscribers and users of the Criterion Channel Service, supplied supporting documentation, aided in drafting the Complaints, and frequently communicated with Class Counsel regarding settlement negotiations and strategy. Mr. Lucchese-Soto, Mr. McGuire, Mr. Wickham, and Mr. Heller were prepared to testify at deposition and trial, if necessary. And they were actively consulted during the settlement process.

51.     In short, Mr. Lucchese-Soto, Mr. McGuire, Mr. Wickham, and Mr. Heller assisted Class Counsel in pursuing this action on behalf of the class, and their involvement in this case has been nothing short of essential.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 5th day of August, 2025 at New York, New York.

>                          */s/ Yitzchak Kopel*
>                             Yitzchak Kopel