**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANCIS LUCCHESE-SOTO, KEVIN MCGUIRE, MATTHEW WICKHAM, AMITAI HELLER, individually and on behalf of all others similarly situated,<br><br>                               Plaintiffs,<br><br>      v.<br><br>THE CRITERION COLLECTION, LLC,<br><br>                               Defendant. | Case No. 1:24-cv-07345-VEC<br><br>Hon. Valerie E. Caproni |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: October 8, 2025

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Max S. Roberts
Victoria X. Zhou
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: ykopel@bursor.com
            mroberts@bursor.com
            vzhou@bursor.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich (MR-4166)
Michael N. Pollack (6173273)
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
E-mail: mreich@zlk.com
            mpollack@gmail.com

*Class Counsel*

# <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION ................................................................................................ 1

THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS.................... 2

TERMS OF THE SETTLEMENT ......................................................................... 4

I.    Class Definition ........................................................................................4

II.   Monetary Relief ........................................................................................4

III.  Prospective Relief .....................................................................................5

IV.   Release ......................................................................................................5

V.    Notice And Administration Expenses .......................................................7

VI.   Incentive Awards ......................................................................................7

VII.  Attorneys' Fees And Expenses .................................................................7

ARGUMENT ......................................................................................................... 7

I.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE...............7

      A.    The *Grinnell* Factors .........................................................................9

            1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)...................................................9

            2.    The Reaction Of The Class (*Grinnell* Factor 2)........................11

            3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ...........12

            4.    Plaintiffs Would Face Real Risks If The Case Proceeded, And Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factors 4, 5, And 6) ........................13

            5.    Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ....................................................14

            6.    The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)................................................14

      B.    The Rule 23(e)(2) Factors .................................................................16

            1.    The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))............16

            2.    The Settlement Was Negotiated At Arm's Length .....................16

            3.    The Settlement Provides Adequate Relief To The Class...........17

            4.    The Settlement Treats All Class Members Equally....................18

II.   CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ...............19

      A.    The Proposed Settlement Class Meets The Requirements Of Rule 23(a).........................................................................................19

            1.    Numerosity................................................................................19

            2.    Commonality..............................................................................20

i

|     |     | 3.  | Typicality .......................................................................................................... | 21 |
|     |     | 4.  | Adequacy ........................................................................................................... | 21 |
|     | B.  |     | The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3) .................................................................................. | 22 |
|     |     | 1.  | Predominance .................................................................................................... | 23 |
|     |     | 2.  | Superiority ......................................................................................................... | 23 |
| III. |     |     | THE NOTICE PLAN COMPORTS WITH DUE PROCESS ........................... | 25 |
| IV. |     |     | THE OBJECTION SHOULD BE OVERRULED ............................................. | 26 |
|     |     |     | CONCLUSION ............................................................................................................ | 26 |

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Adkins v. Facebook, Inc.*,
  2021 WL 1817047 (N.D. Cal. May 6, 2021)........................................................... 15

*Alcantara v. CNA Mgmt., Inc.*,
  264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) ................................................................ 19

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013)........................................................................... 14

*Carroll v. General Mills, Inc.*,
  2023 WL 4361093 (C.D. Cal. June 26, 2023) ...................................................... 10

*Carter v. Scripps Networks, LLC*,
  2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023) ...................................................... 10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................................... 8, 11, 14

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ................................................................................... 19

*Cruz Guerrero v. Montefiore Health Sys. Inc*,
  2025 WL 100889 (S.D.N.Y. Jan. 15, 2025)......................................................... 24

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .............................................................................................. 24

*Esposito v. Nations Recovery Center, Inc.*,
  2021 WL 2109077 (D. Conn. May 25, 2021) ...................................................... 14

*Ferrick v. Spotify USA Inc.*,
  2018 WL 2324076 (S.D.N.Y. May 22, 2018) ...................................................... 17

*Flores v. CGI Inc.*,
  2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022)............................................... 13, 14

*Fox v. Cheminova*,
  213 F.R.D. 113 (E.D.N.Y. Feb. 28, 2003)............................................................ 23

*Gardener v. MeTV*,
  2023 WL 4365901 (N.D. Ill. July 6, 2023) .......................................................... 10

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
  328 F.R.D. 35 (W.D.N.Y. 2018) ........................................................................... 11

*Hernandez v. Uzzal Pizzeria, Inc.*,
  2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022) ........................................................ 18

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. Jan. 29, 2007)............................................................ 19

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
  271 F. App'x 41 (2d Cir. 2008) ............................................................................ 25

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................... 12

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.*,
  607 F. Supp. 1312 (S.D.N.Y. 1985) ..................................................................... 12

*In re Google LLC Street View Elec. Commc'ns Litig.*,
  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ..................................................... 15

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................ 16, 18

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ............................................................ 10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................ 25

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................ 11

*In re Nigeria Charter Flights Cont. Litig.*,
    233 F.R.D. 297 (E.D.N.Y. 2006) .................................................................... 24

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) .............................................. 16, 17, 18, 19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ................................................. 8

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ........................................................................... 24

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. 2012) ............................................................... 11

*In re Vizio, Inc.*,
    2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) ............................................ 19, 20

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987) ........................................................................... 23

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152, (S.D.N.Y. Mar. 19, 2014) .................................................... 20

*Jara v. Felidia Restaurant, Inc.*,
    2018 WL 11225741 (S.D.N.Y. Aug. 20, 2018) ........................................... 8, 16

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
    333 F.R.D. 314 (S.D.N.Y. 2019) ...................................................................... 8

*Lamb v. Forbes Media LLC*,
    2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) ............................................... 10

*Lane v. Facebook, Inc.*,
    2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) ................................................ 15

*Lowe v. NBT Bank, N.A.*,
    2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022).......................................Passim

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d. Cir. 1997) .................................................. 20, 21, 22, 23

*Martin v. Meredith Corp.*,
    2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ................................................ 10

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. 2012) ............................................................... 12

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ........................................................................... 17

*McLaughlin v. IDT Energy*,
    2018 WL 3642627 (E.D.N.Y. July 30, 2018)................................................... 9

*Nichols v. Noom, Inc.*,
    2022 WL 2705354 (S.D.N.Y. July 12, 2022) ................................................. 12

*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ....................................................... 9, 13
*Peoples v. Annucci*,
   180 F. Supp. 3d 294 (S.D.N.Y. 2016) ............................................................... 8
*Philemon v. Aries Capital Partners, Inc.*,
   2019 WL 13224983 (E.D.N.Y. July 1, 2019)....................................................... 14, 23
*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ............................................................... 23
*Robinson v. New York City Transit Auth.*,
   2020 WL 588405 (S.D.N.Y. Aug. 31, 2020)....................................................... 21, 22
*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) ............................................................... 9
*Times v. Target Corp.*,
   2019 WL 5616867 (S.D.N.Y. 2019) ............................................................... 9
*Torres v. Gristede's Oper. Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010)....................................................... 12
*Trinidad v. Pret a Manger (UDS) Ltd.*,
   2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) ............................................................... 17
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................... 8, 25
*Weigner v. City of N.Y.*,
   852 F.2d 646 (2d Cir. 1988) ............................................................... 25

## STATUTES

18 U.S.C. § 2510 ............................................................................................... 5
18 U.S.C. § 2710 ............................................................................................... 5
Fla. Stat. §§ 934.01 ............................................................................................... 5
18 Pa. Cons. Stat. §§ 5701 ............................................................................................... 5

## RULES

Fed. R. Civ. P. 23 ............................................................................................... 24, 25, 26
Fed. R. Civ. P. 23(a) ............................................................................................... 18, 19, 23
Fed. R. Civ. P. 23(a)(1) ............................................................................................... 19
Fed. R. Civ. P. 23(a)(2) ............................................................................................... 20
Fed. R. Civ. P. 23(a)(3) ............................................................................................... 21
Fed. R. Civ. P. 23(a)(4) ............................................................................................... 21
Fed. R. Civ. P. 23(b) ............................................................................................... 18
Fed. R. Civ. P. 23(a) and (b) ............................................................................................... 24
Fed. R. Civ. P. 23(b)(3) ............................................................................................... 8, 19, 22, 23
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 11, 24, 25
Fed. R. Civ. P. 23(e)(2) ............................................................................................... 8

## OTHER AUTHORITIES

NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ................................................................... 8

Plaintiffs Francis Lucchese-Soto, Kevin McGuire, Matthew Wickham, and Amitai Heller ("Plaintiffs"), by and through their undersigned counsel, Bursor & Fisher, P.A. and Levi & Korsinsky, LLP ("Class Counsel"),[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement.  The Settlement Agreement (the "Agreement") and its exhibits are attached as Exhibit 2 to the Declaration of Yitzchak Kopel in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Incentive Awards ("Kopel Fees Decl.").  *See* ECF No. 34-2.

## **INTRODUCTION**

After approximately one year of litigation and extensive settlement discussions with the assistance of a neutral mediator, Marc Isserles, Esq. of JAMS, Plaintiffs have reached a Class Action Settlement (the "Settlement") with The Criterion Collection, LLC (the "Defendant") and request final approval of the Settlement.  The settlement—preliminarily approved by this Court on May 23, 2025—provides that Settlement Class Members who have timely submitted a valid claim form are entitled to a *pro rata* share of the $4,500,000 cash payment set forth by the Settlement Agreement.  Agreement ¶ 2.4.  Further, this Agreement achieves significant injunctive relief to the Settlement Class Members and future users of Defendant's video-services, as the Agreement provides that Defendant shall not use the Meta Pixel or Segment SDK on its website thecriterionchannel.com or mobile applications to disclose to Meta or Twilio the specific video content requested or obtained by a specific individual until such time as the VPPA is abolished, amended, or otherwise declared unconstitutional.  *See id.* ¶ 2.2.  Any attorneys' fees and costs, incentive awards, and notice and administration costs are to be paid out of the Settlement Fund.  *Id.* ¶ 1.32.

---

[1] All capitalized terms not otherwise defined herein have the same definitions as set out in the Settlement Agreement.  *See* ECF No. 29-2.

The settlement administrator, Kroll Settlement Administration LLC ("Kroll"), has implemented the Court-approved notice plan, and the direct notice alone has reached at least 96.2% of likely Settlement Class Members. Patrick M. Passarella Declaration in Support of Final Approval of Class Action Settlement ¶ 14 ("Passarella Decl."). The reaction from the Settlement Class has been overwhelmingly positive. Namely, Kroll has implemented the Court-approved notice plan and direct notice has since successfully reached 96.2% of the class members—approximately 393,920 out of 409,486 class members—via email and postal mail. *See* Passarella Decl. ¶¶ 9-15. In total, there were 52,068 timely claims submitted, 9 requests for exclusion, and one objection. Passarella Decl. ¶¶ 16-24; *see also* ECF No. 36. Thus, the Settlement Class overwhelmingly supports and approves of the terms of the Agreement. *Id.* ¶¶ 16-24.

This is all to say that the Class has obtained extraordinary relief, so the Court should have no hesitation in granting final approval. For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

On September 27, 2024, Plaintiff Francis Lucchese-Soto filed suit against Defendant by filing a complaint on September 27, 2024, in the United States District Court for the Southern District of New York, in the instant action. *See* ECF No. 1.

Plaintiffs Kevin McGuire, Matthew Wickham, and Amitai Heller filed a separate complaint against Defendant later that day on September 27, 2024, also in the United States District Court for the Southern District of New York. *See McGuire, et al. v. The Criterion Collection, LLC*, No. 1:24-cv-07354 (S.D.N.Y.).

On November 25, 2024, the Court entered an order consolidating the *McGuire* action with the instant action. Plaintiffs filed their Consolidated Amended Complaint on December 6, 2024 (ECF No. 12). Defendant filed a Motion to Dismiss on January 21, 2025 (ECF Nos. 15 and 16).

On January 24, 2025 (ECF No. 20), the Parties filed a Joint Letter Motion requesting that the instant action be stayed pending mediation. The Court granted the stay on January 31, 2025 (ECF No. 22). Thereafter, the Parties agreed to engage in settlement discussions and proceed in mediation with Marc E. Isserles, Esq. of JAMS. The Parties participated in an all-day in-person mediation session with Mediator Isserles on April 2, 2025. Kopel Fees Decl. ¶ 12. In preparation for the mediation, the Parties submitted lengthy, detailed mediation statements describing their respective legal arguments and theories on potential damages. *Id.* The parties reached an agreement on the material terms of a settlement in principle, and, on April 2, 2025, informed the Court that they had done so and that Plaintiffs intended to file an amended complaint in connection with the settlement. *See id*. ¶ 13. On April 14, 2025, Plaintiffs filed a First Amended Complaint alleging the same claims under the VPPA, ECPA, WESCA, and the FSCA. *Id.* ¶ 14; *see also* ECF No. 25. However, the First Amended Complaint removed all references to Vimeo as a third party allegedly receiving personally identifiable information of the class. *See* ECF No. 25.

On May 14, 2025, Plaintiffs filed a Class Action Settlement Agreement which set forth the terms and conditions agreed upon in the settlement in principle. ECF No. 29-1. On May 23, 2025, the Court filed an order granting Preliminary Approval of the Settlement Agreement, certified the Class for purposes of settlement, appointed Plaintiffs Lucchese-Soto, McGuire, Wickham, and Heller as Class Representatives and Bursor & Fisher, P.A. and Levi & Korsinsky, LLP as Class Counsel, and also approved the Notice Plan. Declaration of Yitzchak Kopel In Support of Final Approval ("Kopel Final Approval Decl.") ¶ 3; *see also* ECF No. 31.

During and since that time, Class Counsel has worked with Kroll to carry out the Court-ordered Notice Plan. Kopel Final Approval Decl. ¶¶ 3-5. Specifically, Class Counsel helped compile and review the contents of the required notice, reviewed the final claim and notice forms,

and reviewed and tested the settlement website before it launched. *Id.*   Class Counsel has also

been in weekly contact with Kroll regarding the Class' submitted Claim Forms. *Id*. ¶ 5.

## TERMS OF THE SETTLEMENT

### I.   CLASS DEFINITION

The "Settlement Class" or "Settlement Class Members" is defined in the Preliminary

Approval Order as:

> [A]ll persons who during the Class Period in the United States (i) were a registered user of, or had subscription to, the Criterion Channel Service; and (2) watched a pre-recorded video through the Criterion Channel Service.
>
> Excluded from the Settlement Class are: (1) the Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

Agreement ¶ 1.6-1.7, 1.30, 1.31.

### II.   MONETARY RELIEF

Defendant shall commit the sum of Four Million Five Hundred Thousand Dollars

($4,500,000.00) into the Settlement Fund to pay or cause to be paid for the following: (i) approved

claims for cash benefits submitted by Settlement Class Members, distributed on a *pro rata* basis

as a cash payment; (ii) Kroll's expenses occurred in administration of the Notice Plan; (iii) Class

Counsel's Fee Award, and (iv) other costs and expenses, including but not limited to the Service

Awards to the Class Representatives, in amounts as may be ordered by the Court, but no more than

$2,500 each.  Agreement ¶¶ 1.32, 2.1-2.4, 8.1, 8.4.

## III.    PROSPECTIVE RELIEF

Upon entry of Final Judgment, Defendant shall not use the Meta Pixel or Segment SDK on its Website and/or Apps to disclose to Meta or Twilio the specific video content requested or obtained by a specific individual until such time as the VPPA is abolished, amended, or otherwise declared unconstitutional.  *Id*. ¶ 2.2.

## IV.    RELEASE

In consideration of the Settlement benefits, Upon the Effective Date, the Class Representatives, and those Settlement Class Members, and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, reinsurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations ("Releasing Parties"), and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contract or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees, and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on the Action, the Video Privacy Protection Act, 18 U.S.C. § 2710, the Electronic Communications Privacy Act, 18 U.S.C. § 2510, the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. §§ 5701, et seq., the Florida Security of Communications Act, Fla, Stat. §§ 934.01, et seq., or any other

state, federal, local, statutory, or common law or any other law, rule or regulation, against

Defendant The Criterion Collection, LLC, as well as any and all of its respective present or past

heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies,

subsidiaries, divisions, licensors, licensees, associates, affiliates, employers, employees, agents,

consultants, independent contractors, insurers, reinsurers, directors, managing directors, officers,

partners, vendors, joint ventures, principals, members, attorneys, accountants, financial and other

advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives,

successors in interest, assigns and companies, firms, trusts, and corporations ("Released

Parties"), or any of them, arising out of any facts, transactions, events, matters occurrences, acts,

disclosures, statements, representations, omissions or failures to act regarding the alleged

disclosure, use, interception or transfer of information of or related to the Settlement Class

Members through use of the Meta pixel, the Segment API/SDK, or other pixels, cookies, or

tracking or analytics tools on the Criterion Channel Service, including all claims that were

brought or could have been brought in the Action ("Released Claims"), against the Released

Parties, and each of them.  Further, upon the Effective Date, and to the fullest extent permitted

by law, each Settlement Class Member, shall, either directly, indirectly, representatively, or in

any capacity, be permanently barred and enjoined from filing, commencing, prosecuting,

intervening in, or participating (as a class member or otherwise) in any lawsuit, action, or other

proceeding in any jurisdiction (other than participation in the Settlement as provided herein)

against any Released Party based on the Released Claims.  Nothing herein is intended to release

any claims any governmental agency or governmental actor has against Defendant.  *Id.* ¶¶ 1.24-

1.26, 3.

## V.     NOTICE AND ADMINISTRATION EXPENSES

The Settlement Fund will be used to pay the cost of sending the Notice as required by the Court, as well as all other costs of administrating the Settlement Agreement.  *Id.* ¶ 1.32.

## VI.     INCENTIVE AWARDS

In recognition for their efforts on behalf of the Settlement Class, the Parties have agreed that each of the Class Representatives may receive, subject to Court approval, Service Awards of up to $2,500 from the Settlement Fund as appropriate compensation for their time and effort serving as Class Representatives and Parties to this Action.  *Id.* ¶¶ 1.27, 8.4.

## VII.     ATTORNEYS' FEES AND EXPENSES

Defendant has agreed that the Settlement Fund may also be used to pay proposed Class Counsel's reasonable attorneys' fees and to reimburse costs and expenses in this Action, in an amount to be approved by the Court.   Agreement ¶ 8.1.   Class Counsel has agreed, with no consideration from Defendant, to limit its petition to the Court for attorneys' fees to one-third of the Settlement Fund, or $1,499,850.00.  *Id.*

## **ARGUMENT**

## I.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of: "all persons who [from September 27, 2022 through December 27, 2024] in the United States (i) were a registered user of, or had a subscription to, the Criterion Channel Service; and (2) watched a pre-recorded video through the Criterion Channel Service."  Agreement ¶¶ 1.2, 1.7; ECF No. 31 ¶ 9.

No substantive changes have occurred since that ruling, and more importantly, only one objector has challenged that conclusion—without valid explanation.  The Court may therefore rely

on the same rationale as explained in the preliminary approval order to find that class certification is appropriate in connection with final approval.

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

"Courts have discretion regarding the approval of a proposed class action settlement." *Jara v. Felidia Restaurant, Inc.*, 2018 WL 11225741, at *1 (S.D.N.Y. Aug. 20, 2018). "In exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Id*. "Due to the presumption in favor of settlement, absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (cleaned up).

In evaluating a class action settlement, courts in the Second Circuit consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

For the reasons described below, the Court should now grant final certification because the Settlement Class meets all the requirements of the *Grinnell* factors, Rule 23(a), and Rule 23(b)(3).

8

*See Times v. Target Corp.*, 2019 WL 5616867, *1-2 (S.D.N.Y. 2019) (granting plaintiffs' motion for class certification because these requirements are met). Indeed, in granting preliminary approval, this Court has already determined that class certification for settlement purposes is warranted. *See* ECF No. 31 ¶ 9.

### A.    The *Grinnell* Factors

#### 1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

"[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022). As such, courts have consistently held that unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *See TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

Here, had no settlement been reached, the next steps in the litigation would have been discovery, motion practice on Defendant's Motion to Dismiss, and further contested motions for summary judgment and class certification. All of that litigation would be, at minimum, costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *10 (E.D.N.Y. July 30, 2018) (finding the first *Grinnell* factor weighed in favor of settlement approval where "the parties would likely need to brief motions for class certification, summary judgment, and potentially proceed to trial").

Although Plaintiffs are confident in the strength of their claims, they nevertheless recognize that this litigation is inherently risky. Indeed, other VPPA cases based on disclosures through similar technologies to similar third parties, such as to Meta Platforms, Inc. through the Facebook

Pixel, have even failed at the motion to dismiss stage. *See, e.g.*, *Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *14 (S.D.N.Y. Sept. 28, 2023) (granting motion to dismiss and finding that plaintiffs' subscriptions to a newsletter and the website did not "render[] them 'subscribers' of goods and services from a video taper service provider within the meaning of the VPPA"); *Gardener v. MeTV*, 2023 WL 4365901, at *5 (N.D. Ill. July 6, 2023) (granting the motion to dismiss and "find[ing] dispositive MeTV's argument that Plaintiffs are not consumers under the Act"); *Carter v. Scripps Networks, LLC*, 2023 WL 3061858, at *6 (S.D.N.Y. Apr. 24, 2023) (granting motion to dismiss because "[t]he Complaint describes plaintiffs as subscribers of hgtv.com newsletters, but does not plausibly allege that they were subscribers of hgtv.com video services"); *Martin v. Meredith Corp.*, 2023 WL 2118074, at *3 (S.D.N.Y. Feb. 17, 2023) ("The plaintiff's VPPA claim is dismissed because the complaint itself shows that the defendants do not disclose information showing that a person has 'requested or obtained specific video materials or services.'"); *Carroll v. General Mills, Inc.*, 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (granting motion to dismiss because "[p]laintiffs do not allege any facts suggesting that the delivery of audiovisual material is General Mills' particular field of endeavor or that General Mills' products are specifically tailored to serve audiovisual material"). And the plaintiffs in several Facebook Tracking Pixel-based VPPA cases have failed after winning on the pleadings. *See, e.g.*, *Doe v. Medstar Health, Inc.*, 23-C-20-000591, Dkt. Nos. 70-71, at p. 1 (Md. Cir. Ct. 2023) (denying a motion for class certification in Pixel case); *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (granting a motion for summary judgment in VPPA Facebook cookie case because "there [was] no evidence that Hulu knew that Facebook might combine a Facebook user's identity (contained in the c_user cookie) with the watch-page address").

Moreover, "[e]ven assuming that plaintiffs were successful in defeating any pretrial motions filed by defendants and were able to establish defendants' liability at trial, there is always

the potential for an appeal, which would inevitably produce delay." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 55 (W.D.N.Y. 2018) (internal quotations omitted).    Ultimately, continued litigation could add several years before a resolution is reached.    Such risks support approval of this Settlement.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class.    It secures a *pro rata* share of the Settlement Fund to each Settlement Class Member who submitted a timely and completed Claim Form, after deducting administrative costs and Court-awarded Service and Class Counsel fees.    Agreement ¶¶ 2.1, 8.1-8.4.    The Settlement also secures injunctive relief and ensures that Defendant will not use the Facebook Tracking Pixel or Segment SDK on its website or mobile applications to disclose to Meta or Twilio, Inc. the specific video content requested or obtained by a specific individual. Agreement ¶ 2.2.    This *Grinnell* factor weighs in favor of preliminary approval.

## 2.    The Reaction Of The Class (*Grinnell* Factor 2)

Under the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. 2012) (quoting *Grinnell*, 495 F.2d at 463).    "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted).    This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive.    Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 31 ¶¶ 12-23), and the Settlement Administrator directly reached at least 96.2% of the Settlement Class.    *See* Passarella Decl. ¶ 14.    To date, 52,068 Settlement Class Members have submitted claims under

the Settlement, with at least 51,601 determined valid. *Id.* ¶ 19. By contrast, only one Settlement Class Member objected to the Settlement (as addressed in Argument § IV, *infra*), and only nine members (0.00002% of the approximately 409,486 Settlement Class) opted out. *See id.* ¶¶ 24. This exceptional participation rate and low exclusion/objection rate from the Settlement Class leaves no question that the Settlement Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g.*, *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."); *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *9 (S.D.N.Y. July 12, 2022) ("There have also been no objections to the settlement and only a total of eight opt-outs-a [sic] tiny amount in relation to the 2 million members of the settlement class."); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.*), 607 F. Supp. 1312, 1321 (S.D.N.Y. 1985) (factor met where 0.3% of class members opted out of the settlement). Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement … but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). Prior to reaching the Settlement and as part of the mediation process, the Parties exchanged informal discovery and lengthy mediation statements, which detailed the Parties' opposing stances on issues such as the nature and capabilities of the technology on Defendant's website and mobile applications as applied to the relevant strengths and weaknesses

of the Parties' respective legal arguments, potential damages theories, and the size and scope of the class. Kopel Fees Decl. ¶ 12. Given that the information exchanged was similar to the information that would have been provided in formal discovery related to the issues of class certification and summary judgment, this information was sufficient for the Parties to assess the strengths and weakness of the claims and defenses and their relative negotiating positions at the mediation. *Id.*

Further, Class Counsel's experience in class action matters, as well as the other efforts made by counsel on both sides, confirms that the Parties are sufficiently well-apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement. This *Grinnell* factor thus also weighs in favor of preliminary approval.

### 4. Plaintiffs Would Face Real Risks If The Case Proceeded, And Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factors 4, 5, And 6)

"Courts generally consider the fourth, fifth, and sixth Grinnell factors together." *Pearlstein*, 2022 WL 4554858, at *5 (internal quotations omitted). In weighing the risks of certifying a class and establishing liability and damages, "the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the outcome of the case." *Lowe v. NBT Bank, N.A.*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022) (cleaned up). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Flores v. CGI Inc.*, 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) (internal quotations omitted).

"Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Defendant], they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL

4621433, at *8.  In particular, Plaintiffs would face "[t]he risk of obtaining … class certification and maintaining [it] through trial," which "would likely require extensive discovery and briefing." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013).

Further, "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery."  *Lowe*, 2022 WL 4621433, at *8; *see also Flores*, 2022 WL 13804077, at *8 ("The risks attendant to certifying a class and defending any decertification motion supports approval of the settlement.").  Approval of the Settlement obviates the "[r]isk, expense, and delay" of further litigation, and these *Grinnell* factors thus support preliminary approval.  *Lowe*, 2022 WL 4621433, at *8.

### 5. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

While Defendant could likely withstand a greater judgment, "this factor standing alone does not mean that the settlement is unfair."  *Philemon v. Aries Capital Partners, Inc.*, 2019 WL 13224983, at *12 (E.D.N.Y. July 1, 2019).

### 6. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

"The determination of whether a settlement amount is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum … Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Esposito v. Nations Recovery Center, Inc.*, 2021 WL 2109077, at *5 (D. Conn. May 25, 2021).  Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  Per the Second Circuit in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of

14

a single percent of the potential recovery." 495 F.2d at 455 n.2.

Applying these standards here, there is no question that this factor supports approval of the Settlement. The settlement fund of $4,500,000, even after deducting Kroll's administrative expenses, Class Counsel's fees, and the Class Representative's Service Awards, will yield a significant benefit to each of the participating Class Members when distributed on a *pro rata* basis. The Settlement also requires business practice revisions: as upon entry of the Final Judgment, Defendant shall not use the Facebook Pixel or Segment SDK on its website and mobile applications to disclose to third parties users' specific video-viewing histories. Agreement ¶ 2.2.

Further, this Settlement aligns and compares favorably with the VPPA and similar privacy settlements that came before it. *See, e.g.*, *Moog et al. v. The Christian Broadcasting Network, Inc.*, No. 1:24-cv-00501-PTG-IDD, ECF No. 35 (E.D. Va. Jan. 29, 2025) (finally approving a four million dollar VPPA settlement); *Lane v. Facebook, Inc.*, 2010 WL 9013059, at *7 (N.D. Cal. Mar. 17, 2010), *aff'd*, 696 F.3d 811 (9th Cir. 2012) (approving settlement in VPPA case that only provided *cy pres* relief with no monetary relief to Settlement Class Members); *In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11-14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, 2021 WL 1817047, at *6-7 (N.D. Cal. May 6, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach); *Waller et al v. Times Publishing Co.*, No. 2023-027889- CA-01 (Fla. 17th Cir. Ct.) (approving settlement in VPPA case that provided for $950,000 common fund).

B.      **The Rule 23(e)(2) Factors**

1.      **The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))**

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) ("*In re Payment Card I*") (internal quotations omitted). Here, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries": they used or subscribed to the Criterion Channel Service, watched a pre-recorded video using the Service, and had their personal information, including a record of the videos they viewed, disclosed. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class." *Id.* (internal quotations omitted). Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel. *See* ECF No. 34 at Ex. 1 (Firm Resume of Bursor & Fisher, P.A.); ECF No. 35 at Ex. C (Firm Resume of Levi & Korsinsky LLP).

2.      **The Settlement Was Negotiated At Arm's Length**

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal quotations omitted). Further, "[a] settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process." *Jara*, 2018 WL 11225741, at *2 (cleaned up). Here, both counsel for Plaintiffs and for Defendant are experienced in class action litigation. *See* ECF No. 34 at Ex. 1; ECF No. 35 at Ex. C.

16

Moreover, the Parties participated in a mediation before Marc E. Isserles, Esq. of JAMS before reaching an agreement on the material terms of the Settlement.  Kopel Fees Decl. ¶ 12.

### 3.    The Settlement Provides Adequate Relief To The Class

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Rule 23(e)(2)(C)(i-iv).

*"The costs, risks, and delay of trial and appeal."*  This factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense, and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial.  *In re Payment Card I*, 330 F.R.D. at 36.  As noted *supra*, the Settlement has met each of these *Grinnell* factors.  Argument § I.A *supra*.

*"The effectiveness of any proposed method of distributing relief to the class."*  Class Members need only submit a simple claim form—to receive significant monetary relief.  This is a reasonable method of distributing relief to Settlement Class Members, especially given that Settlement Class Members would not have any remedy other than filing their own, separate litigation action.  *See Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *8 (S.D.N.Y. May 22, 2018) ("[R]equiring class members to submit copyright registration numbers is reasonable because plaintiffs would have to provide that information to pursue their own copyright infringement action.").

*"The terms of any proposed award of attorneys' fees."*  In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the

instigation of the entire class." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). Here, Class Counsel has petitioned the Court for $1,499,850.00 in fees and expenses. *See* ECF No. 33. This represents 33.33% of the $4.5 million in monetary relief that has been made available, which is common and reasonable. *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).

   ***"Any agreement required to be identified by Rule 23(e)(3)."*** This factor requires identification of "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696. No such agreement exists other than the Settlement.

### 4.    The Settlement Treats All Class Members Equally

   This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47. The Settlement both accounts for any differences between Class Members and treats them equally. Here, all Class Members have suffered the same injuries with little to no difference in injuries between individual Class Members. The relief provided in the Settlement Agreement entitles each valid claimant to a *pro rata* share of the $4.5 million Settlement Fund. Agreement ¶ 2.4. This fairly and adequately accounts for each individual Class Member as they will each be receiving the same payment, on a *pro rata* basis, for suffering the same injuries. As a result, each Settlement Class Member that submits a claim will have equal compensation to other Class Members who have suffered equal injuries and therefore be at an equal place relative to one another.

## II.    CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Payment Card I*, 330 F.R.D. at 50.  Under Fed. R. Civ. P. 23(a), a class action may be maintained if all the prongs of Fed. R. Civ. P. 23(a) are met, as well as one of the prongs of Fed. R. Civ. P. 23(b).  Fed. R. Civ. P. 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  As relevant here, Fed. R. Civ. P. 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A.    The Proposed Settlement Class Meets The Requirements Of Rule 23(a)

#### 1.    Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *In re Vizio, Inc.*, 2019 WL 12966639, at *4 (C.D. Cal. Jan. 4, 2019) (VPPA case finding Rule 23(a)(1) is met); *Lowe*, 2022 WL 4621433, at *4 ("Numerosity is presumed at a level of 40 members.") (cleaned up); *see also Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y.

Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the number of Class Members is in the hundreds of thousands (approximately 409,486 Class Members). Passarella Decl. ¶ 5. Thus, the numerosity requirement is easily satisfied.

### 2. Commonality

Next, Rule 23(a)(2) provides for class certification only if "there are questions of law or fact common to the class." The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *In re Vizio, Inc.*, 2019 WL 12966639, at *4 (C.D. Cal. Jan. 4, 2019) (VPPA case finding Rule 23(a)(2) was met). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014).

Here, Plaintiffs readily meet this standard, as many significant common questions of law and fact exist, including: (1) whether Defendant is a video tape service provider within the meaning of the VPPA; (2) whether the information Defendant allegedly disclosed to Meta and Twillio constitutes PII under the VPPA; (3) whether Defendant knowingly disclosed Class Members' PII to Meta and Twilio; (4) whether Defendant gave notice to Class Members regarding the disclosure of such information; (5) whether Defendant obtained separate and district, informed, written consent consistent with the requirements of the VPPA from Class Members before disclosing their information to Meta and Twilio; (6) whether Defendant's conduct violates the VPPA and

20

applicable wiretapping laws; and (7) whether Class Members are entitled to damages, declaratory, and injunctive relief, and other remedies.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquiries is Defendant's alleged common course of conduct, i.e., Defendant's alleged knowing disclosure of Class Members' PII through technology incorporated into its websites.  Thus, commonality is satisfied.

### 3.    Typicality

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Marisol A.*, 126 F.3d at 376.

Here, Plaintiffs' claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of the Settlement Class Members.  When a Class Member accessed video content on the Defendant's website, the Pixel allegedly caused the video content and a Class Member's Facebook ID to be transmitted to Meta by the Class Member's web browsing device. Accordingly, named Plaintiffs' claims are typical of the Class because they were subject to the same conduct as the other Class Members, and they are alleged to have suffered the same injury as a result.

### 4.    Adequacy

Finally, Rule 23(a)(4)'s adequacy requirement is also met.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class."  In assessing the adequacy requirement, courts evaluate whether: (1) the class representatives have common interests (i.e. there is no conflict) with the members of the class, and (2) whether the class

representatives will vigorously prosecute the interests of the class through qualified counsel. *Marisol A.*, 126 F.3d at 378. "[T]he requirement that the named plaintiffs adequately represent the class is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Robinson v. New York City Transit Auth.*, 2020 WL 588405, at *13 (S.D.N.Y. Aug. 31, 2020), *report and recommendation adopted*, 2020 WL 5814189 (S.D.N.Y. Sept. 30, 2020) *quoting Marisol A.*, 126 F.3d at 378.

Here, the named Plaintiffs have common interests with the members of the Class in seeking fair, reasonable, and adequate compensation for Defendant's alleged violation of the VPPA and wiretapping laws. Indeed, the named Plaintiffs' distributions from the Settlement Fund will be calculated using the same methodology as the distributions to every other participating class member. Further, the named Plaintiffs have vigorously pursued and protected the interests of the Class in this case by, among other examples, maintaining, reviewing, and explaining relevant records probative of the Class claims, including records regarding their subscription to Defendant's website and Facebook account information, seeking out and engaging highly qualified counsel, and negotiating a settlement that confers significant benefits to the Class. Additionally, neither Plaintiffs nor counsel have any interest adverse to, or in conflict with, the interests of the Class.

Further, numerous other courts in this District have previously found that Class Counsel adequately met the obligations and responsibilities required of them. *See* ECF No. 34 at Ex. 1, Firm Resume of Bursor & Fisher, P.A.; ECF No. 35 at Ex. C, Firm Resume of Levi & Korsinsky LLP. This factor thus favors final approval.

### B.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law "predominate over any questions affecting only individual members and that a class action is superior to other available methods

for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both predominance and superiority are met here.

### 1. Predominance

"Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class." *Philemon*, 2019 WL 13224983, at *9. "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotations omitted). "Satisfaction of Rule 23(a) [as Plaintiffs have done here] goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Lowe*, 2022 WL 4621433, at *6 (cleaned up). The predominance inquiry requires an analysis of whether there was a "unitary course of conduct." *Marisol A.*, 126 F.3d at 377. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. Feb. 28, 2003) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987)).

Here, common questions of the kind noted above predominate because there are few, if any, individualized factual issues, and because the core facts involve Defendant's uniform conduct that allegedly harmed all Class Members. Specifically, Plaintiffs allege that Defendant knowingly utilized the Facebook Pixel and Segment SDK to disclose Class Members' PII to third parties, and that this conduct uniformly injured Plaintiffs' and the other Class Members' legally protected interests under the VPPA and applicable wiretapping laws.

### 2. Superiority

The superiority element of 23(b)(3) is also met here. A class action is the most efficient

judicial avenue where, as here, Defendant's conduct affected hundreds of thousands of individuals in a uniform way. Other available methods, such as individual lawsuits or arbitrations, would be highly inefficient. The parties and judicial system would need to duplicate efforts in such individual proceedings, some of which might be brought in separate venues at different times. "To satisfy the superiority requirement, the moving party must show that the class action presents 'economies of 'time, effort and expense, and promote[s] uniformity of decision.'" *Cruz Guerrero v. Montefiore Health Sys. Inc*, 2025 WL 100889, at *5 (S.D.N.Y. Jan. 15, 2025) (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)). "The superiority requirement is designed to avoid 'repetitious litigation and possibility of inconsistent adjudications." *Id.* (collecting cases).

Here, "a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Settlement Class [M]ember is otherwise entitled." *Lowe*, 2022 WL 4621433, at *6. Further, "litigating this matter as a class action will conserve judicial resources and is more efficient for the Settlement Class [M]embers, particularly those who lack the resources to bring their claims individually." *Id.* Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims, while "the prohibitive cost of proceeding individually against [Criterion] and the likely unavailability of contingency-fee counsel far outweigh any interest the plaintiffs have in proceeding individually." *In re Nigeria Charter Flights Cont. Litig.*, 233 F.R.D. 297, 306 (E.D.N.Y. 2006).

As the requirements of Rule 23(a) and (b) are satisfied, Plaintiffs ask that the Court (1) certify the Class for settlement purposes, (2) appoint the named Plaintiffs as Class Representatives, and (3) appoint Levi & Korsinsky LLP and Bursor & Fisher, P.A. as Class Counsel.

### III.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (cleaned up).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. *See* FED. JUDICIAL CTR., JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010). The notice plan here easily meets these standards, as it provided direct notice and digital notice to at least 96.2% of the Settlement Class. *See* Passarella Decl. ¶ 14.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. *See* ECF No. 31 ¶ 12. The Plan has now been fully carried out by professional settlement administrator Kroll. Pursuant to the Settlement,

Defendant provided Kroll with a list of over 409,000 available names, email addresses and Criterion IDs of potential Settlement Class Members.  *See* Passarella Decl. ¶ 5. Through a combination of direct e-mail and postcard notice, the Court-approved Notice Plan successfully reached at least 96.2% of the Settlement Class. *See id.* ¶ 14.  These notices also directed Settlement Class Members to the Settlement Website, where they were able to submit claims online; access important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions.  *See id.* ¶¶ 5-11.  Accordingly, the requirements of due process and Rule 23 are easily met.

## IV.    THE OBJECTION SHOULD BE OVERRULED

Only one Settlement Class Member, William G. Carey, filed an objection to the Settlement. ECF No. 36.  As is clear from the text of the objection, Mr. Carey's objection has nothing to do with the terms of the Settlement itself and indeed, Mr. Carey fails to distinguish any portion of the Settlement that he finds objectionable.  *Id*.  Rather, Mr. Carey seemingly finds fault in the fact that a settlement exists at all, stating "if th[e] settlement is in accordance with the law, than the law is an ass," and asks the Court to find the Agreement as "nothing more than thinly veiled highway robbery."  *Id.*  This unjustified attempt to prevent the class from obtaining monetary and injunctive relief in the form of the Settlement should be overruled.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated: October 8, 2025                    Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

                                          By: */s/ Yitzchak Kopel*
                                                  Yitzchak Kopel

Max S. Roberts
Victoria X. Zhou
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-mail: ykopel@bursor.com
       mroberts@bursor.com
       vzhou@bursor.com

**LEVI & KORSINSKY, LLP**
Mark S. Reich (MR-4166)
Michael N. Pollack (6173272)
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile:  (212) 363-7171
E-mail: mreichz@zlk.com
       mpollack@gmail.com

*Class Counsel*

## <u>L.R. 7.1(C) CERTIFICATION</u>

I hereby certify that the foregoing Memorandum of Law contains 8,116 words, which meets the word-count limits of both L.R. 7.1(c) and Rule 4.B(i) of Judge Caproni's Individual Rules of Practice in Civil Cases.


Dated: October 8, 2025                    By: _/s/ Yitzchak Kopel_
                                                           Yitzchak Kopel